PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND CITY OF PERTH AMBOY.

Submitted July 3, 1913—Decided November 10, 1913.

1. The right of municipal officers to free transportation on the lines of street railways in municipalities in this state is limited to uniformed public officers or to police officers acting as detectives whose duties are required to be performed without uniform, while engaged in the performance of their public duties.

2. A regulation by the railway company that all police officers whose duties are required to be performed without uniform should, as a means of identification, produce a book or tickets freely issued by the company to all persons of this description, in order to entitle them to free transportation, is not unreasonable. Otherwise the company could not determine whether the person claiming it was entitled to free transportation.

On *certiorari.*

Before Justices SWAYZE, BERGEN and VOORHEES.

For the prosecutor, *Frank Bergen.*

For the defendants, *Frank H. Sommer* and *Joseph E. Stricker.*

The opinion of the court was delivered by

BERGEN, J.    This writ was allowed to review the following order made by the Board of Public Utility Commissioners: "Hereby orders the Public Service Railway Company to comply with the municipal ordinances of the city of Perth Amboy requiring said Public Service Railway Company to permit all policemen and paid firemen, while on duty, to ride on the cars of the company free of charge, within the city limits."

From the facts, not disputed, it appears that the city by ordinance granted permission to the railway company to lay

its rails in the streets subject to a condition that "all police-men and paid firemen, while on duty, shall be permitted to ride on the cars of the said companies, its lessees or assignees, free of all charge." The prosecutor admits that its franchise or contract contained the condition quoted, and that it was observed until it was, as it claims, abrogated by the act of the legislature creating the Board of Public Utility Commissioners. It also admits that the company does not carry policemen free of charge unless they are in uniform, but claims its refusals to carry free related to policemen not in uniform who attempted to ride without the book or tickets furnished to non-uniformed detectives, and that its rule, that policemen and firemen should only be carried free when in uniform, or upon presentation of tickets so furnished to non-uniformed detectives, is reasonable and that it is entitled to enforce it.

Reference is made in the report of the commissioners, and also in the brief of counsel for defendants to the case of *State* v. *Sutton,* 54 *Vroom* 46, but an examination of the opinion shows that the questions here involved were not pressed or decided. That opinion deals entirely with the constitutionality of the law, which is a question not here raised. The argument in support of this order is based upon a contractual relation, which the prosecutor claims has been waived or abrogated. I have no doubt that as the city is a mere agent of the state, deriving all its rights from legislation, that the legislature may waive or abrogate, with the consent of the other party, any contract which its agent has entered into.

Section 18 of the Utilities act (*Pamph. L.* 1911, *pp.* 374, 380) provides, among other things, that no public utility shall "hereafter give, grant or bestow on any local, municipal or county official any discrimination, gratuity or free service whatsoever," except that it shall not prevent the entry into any public conveyance, or upon its property, of any such official in the pursuit of his public duties connected with the conveyance or property entered upon.

This provision appeared in section 9 (*Pamph. L.* 1910, *p.* 58) with this addition, "But nothing herein contained shall prevent the free transportation of uniformed public officers while engaged in the performance of their public duties." While the act was in this condition and on March 14th, 1911 (*Pamph. L., p.* 29), the legislature amended section 9 of the act of 1910 by adding after the words "public duties" the following, "or police officers of whatever grade or rank acting as detectives, whose duties require police duty to be performed without uniform," and seem to extend the free service to police officers acting as detectives whose duties required them to act without uniform. But the same year the legislature passed an entirely new act, approved April 21st (*Pamph L.* 1911, *p.* 374), entitled "An act concerning public utilities; to create a board of public utility commissioners and prescribe its duties and powers," which in subdivision (*g*) of section 18 forbids the granting of any gratuity or free service to any municipal officer, and being so entirely inconsistent with the previous acts on this subject, they must fall within the repealer of the act of April 21st, which repealed all acts and parts of acts inconsistent therewith.

Prior to this act no gratuity was lawful except to uniformed public officers, while engaged in the performance of their public duties, or police officers acting as detectives, who need not be in uniform, but the latter act forbids any gratuity to any public officer whether in uniform or not, and that the legislature so understood and intended is manifested by the fact that in the following year, 1912 (*Pamph. L., p.* 235), they enacted a law referring alone to street railway companies, requiring them to "grant free transportation to uniformed public officers while engaged in the performance of their public duties, or police officers of whatever grade or rank acting as detectives, county detectives * * * whose duties require police duty to be performed without uniform," so that as the law now stands, street railway companies are required to give free transportation to *uniformed public officers,* while engaged in the performance of their public duties, or to police officers

acting as detectives whose duties are required to be performed without uniform. It seems to me that incontestably this legislation means that a public officer to be carried free must be in uniform, unless he is acting as a detective. There was nothing before the board of utility commission to show that the acts complained of related to detectives; on the contrary the entire contention of Perth Amboy is that this legislation cannot affect their contractual relation with the prosecuting company. With this contention I do not agree, for, as I have stated, the state has the right to waive any contract which its agent has made as contrary to public policy, and having that right, I think it has been thoroughly and completely exercised by this legislation. It appears in this case that the prosecutor furnishes detectives and other officers, who are required to perform their duties without uniform, a book or tickets indicating their right to free transportation while in the performance of their public duties. This I think a perfectly reasonable regulation, because the railway company cannot without some means of identification, know that the person is an officer whose duties require him to act without a uniform, and as to all other officers, police or otherwise, the law expressly limits the right to free transportation to those who are not only in uniform, but at the same time in the performance of their public duties.

The order under review will be set aside.